IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MALIA SOMONA CHRISP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20CV724 |
| ) | |
| THE UNIVERSITY OF NORTH ) | |
| CAROLINA AT CHAPEL HILL, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This case, before the court for the second time, arises out of the allegedly unlawful treatment of *pro se* Plaintiff Malia Somona Chrisp by her former employer, the University of North Carolina at Chapel Hill ("UNC"). Before the court is UNC's motion to dismiss. (Doc. 9.) For the reasons set forth below, the motion will be granted and the complaint dismissed.

### I. BACKGROUND

The allegations in the complaint, taken in the light most favorable to Chrisp as the non-moving party, show the following:[1]

---

[1] Because a motion to dismiss "tests the sufficiency of a complaint," see Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), the court is "generally limited to a review of the allegations of the complaint itself," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). However, a court can also consider documents explicitly incorporated into the complaint by reference or attached as exhibits. See id. at 166. Here, Chrisp has attached several documents to her complaint concerning charges she filed with the Equal Employment Opportunity Commission ("EEOC") prior to the present action. (See Docs. 1-1; 1-2; 1-3.) She incorporates these documents by reference

Chrisp is a resident of Alamance County, North Carolina, and was employed by UNC as an accounting technician from September 2012 until some point in 2018. (Doc. 1 ¶¶ 2, 15; Doc. 12 at 14.) Chrisp describes herself as "a black female approximately 51-52 years of age" during the relevant time. (Doc. 1 ¶ 15.) In April 2016, she asked her manager about a new job opening posted in the office. (Doc. 1-1 at 1.) Her manager, Jean Estrada, told her she did not qualify for the position even though in the past the manager had sent her other job postings for positions in other UNC departments and encouraged her to apply for them while noting her qualifications for such. (Id.; Doc. 1 ¶ 18.)

In November 2016, UNC ultimately hired an approximately 25-year-old white female for the open position.[2] (Id. ¶¶ 19-20.) According to Chrisp, the new employee was less experienced and less qualified than her. (Id. ¶ 20.) Chrisp does not allege that she applied for the position. (See Doc. 1-4 at 1.) She also

---

into her complaint. (Doc. 1 ¶¶ 9-13.) As such, and because these documents contain relevant facts and background information, the court will consider them in analyzing the present motions.

[2] There are multiple instances in which the allegations in the complaint do not match those in the attached exhibits. For example, the complaint alleges that the new employee was hired in November 2017 (Doc. 1 ¶ 20) while Chrisp's first EEOC charge states it was November 2016 (Doc. 1-1 at 1). Similarly, the complaint alleges that Chrisp filed her first EEOC charge in December 2017 (Doc. 1 ¶ 9) while the attached exhibits show she filed her two EEOC charges in February 2017 and July 2017 (Docs. 1-1; 1-2). Because these EEOC charges could not have been filed before the new employee was hired, it appears that the dates in the exhibits are the correct ones.

alleges generally that UNC did not allow her to attend certain training sessions or "similar opportunities" that would allow her to advance her career. (Doc. 1 ¶ 20.)

On February 13, 2017, Chrisp filed a charge with the EEOC alleging race and age discrimination, specifically listing the April 2016 job posting as the basis for her claims. (Doc. 1-1.) On July 13, 2017, she filed a second EEOC charge alleging retaliation. (Doc. 1-2.) Specifically, she claims her supervisor assigned her work that was not her responsibility, "nit-pick[ed] [her] work," and required her to assemble work binders by herself. (Id. at 1.) On July 31, 2017, the EEOC notified Chrisp that it was closing its file on the February 2017 charge because it was unable to conclude any violation occurred. (Doc. 1-1 at 2.) The dismissal letter included a right-to-sue notification which instructed Chrisp as follows: "In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.**" (Id. at 3 (emphasis in original).) On May 15, 2018, the EEOC responded to Chrisp's July 2017 charge, stating that it was closing its file on the charge because it adopted the findings of the "state or local fair employment practices agency that investigated this charge," and included the same right-to-sue notification. (Doc. 1-3.)

On June 22, 2018, Chrisp filed her first lawsuit in this

3

court.  (See Doc. 2, Case No. 1:18CV542.)  She subsequently amended her complaint four times between November 2018 and August 2019. (Docs. 5; 6; 9; 15, Case No. 1:18CV542.)  For the original complaint and the first three amended complaints, Chrisp proceeded *pro se,* but she had the assistance of counsel for the fourth amended complaint.  (Doc. 15, Case No. 1:18CV542.)  On July 10, 2020, this court granted UNC's motion to dismiss that lawsuit for failure of proper service, and the complaint was dismissed without prejudice.  Chrisp v. Univ. of N. Carolina-Chapel Hill, 471 F. Supp. 3d 713 (M.D.N.C. 2020).

On August 10, 2020, Chrisp filed the present, second action in this court.  (Doc. 1.)  The complaint is identical in all material aspects to the fourth amended complaint from the prior action.  Chrisp alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (first and second claims for relief), age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. 621 et seq. (third claim for relief), and a violation of the North Carolina Equal Employment Practices Act ("EEPA"), N.C. Gen. Stat. § 143-422.1 et seq. (fourth (improperly denominated another "third") claim for relief).  On September 22, UNC moved to dismiss the complaint.

4

(Doc. 9.)  Chrisp was sent a Roseboro[3] letter notifying her of her right to respond.  (Doc. 11.)  She responded (Doc. 12), and UNC filed a reply (Doc. 13).  The matter is fully briefed and ready for decision.

**II. ANALYSIS**

    **A.    Federal Claims**

UNC moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  (Doc. 9.)  As the 90-day filing requirement under 42 U.S.C. § 2000e "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," UNC's motion to dismiss these claims is properly considered under Rule 12(b)(6).  Zipes v. TWA, 455 U.S. 385, 393 (1982); see also United States v. Kivanc, 714 F.3d 782, 789 (4th Cir. 2013) ("The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim."); Shepard v. Lowe's Food Stores, Inc., No. 1:08-CV-679, 2009 WL 4738203, at *2 (M.D.N.C. Dec. 7, 2009) (treating defendant's Rule 12(b)(1) motion to dismiss for failure to file suit within 90 days of receiving a right-to-sue letter as a Rule 12(b)(6) motion).

A motion to dismiss under Rule 12(b)(6) is meant to "test[]

---

[3] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

5

the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations to raise a right to relief above the speculative level so as to nudge the claims across the line from conceivable to plausible." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (alterations and quotations omitted).

Chrisp brings her case *pro se*. As such, she is entitled to a liberal construction of her complaint. See Erickson, 551 U.S. at 94. But this "generosity is not fantasy." Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998). The court is not permitted "to become an advocate for a *pro se* litigant or to rewrite his complaint," Williams v. Guilford Tech. Cmty. Coll. Bd.

6

of Trustees, 117 F. Supp. 3d 708, 716 (M.D.N.C. 2015), nor should it "conjure up questions never squarely presented," Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

With these standards in mind, the court turns to the present motion. Chrisp's first three claims for relief allege race and age discrimination and retaliation in violation of Title VII and the ADEA. (Doc. 1 ¶¶ 22-39.) UNC moves to dismiss, arguing that these claims are time-barred. (Doc. 10 at 5-8.)

Both Title VII and the ADEA contain statutory schemes for the enforcement of the rights protected by each statute. As relevant here, each statute provides that, if the EEOC dismisses a charge that has been filed, it is to notify the person who filed the charge that she can bring suit within 90 days of receiving notice of the EEOC's dismissal. See 42 U.S.C. § 2000e-5(f)(1) (right to sue under Title VII); 29 U.S.C. § 626(e) (same for the ADEA).

Here, Chrisp has brought two separate actions alleging the same claims based on the same underlying events. Her first action, brought on June 22, 2018, was ultimately dismissed without prejudice because she failed to properly serve UNC. See Chrisp, 471 F. Supp. 3d at 717. While the court did not rule on timeliness, it appears that the first action was timely insofar as it was filed within the 90-day window from when Chrisp received the EEOC's

7

second right-to-sue letter on May 15, 2018.[4]  UNC argues that the present lawsuit, however, is untimely because it was filed on August 10, 2020, more than two years after the EEOC's second right-to-sue letter and well outside the 90-day window.  (Doc. 10 at 5-8.)  As such, UNC argues, Chrisp's claims under Title VII and the ADEA are time-barred and should be dismissed.  (Id. at 8.)

Other circuits that have considered the issue hold that "[i]n instances where a complaint is timely filed and later dismissed, the timely filing of the complaint does not 'toll' or suspend the 90-day limitations period."  O'Donnell v. Vencor Inc., 466 F.3d 1104, 1111 (9th Cir. 2006) (citation omitted) (court dismissed second complaint with same Title VII and ADEA claims as timely-filed prior action that was previously dismissed without prejudice because the latter was filed outside the 90-day window); see also Simons v. Sw. Petro-Chem, 28 F.3d 1029, 1030 (10th Cir. 1994); Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993).

No party has identified a Fourth Circuit published decision addressing the issue, and the court is not aware of one.  However, multiple unpublished opinions adhere to this "general rule that a Title VII complaint that has been filed but then dismissed without prejudice does not toll the 90-day limitations period."  Angles v.

---

[4] However, it was untimely as to the first right-to-sue letter, which Chrisp received July 31, 2017, more than ten months before she filed suit.  (Doc. 1-1.)

8

Dollar Tree Stores, Inc., 494 F. App'x 326, 329 (4th Cir. 2012); see also Quinn v. Watson, 119 F. App'x 517, 518 n.* (4th Cir. 2005) (same); Khaliq v. Draper & Goldberg, P.L.L.C., 286 F. App'x 72, 73 (4th Cir. 2008) (applying the same principle in the context of the Fair Debt Collection Practices Act in affirming the dismissal of a second complaint because it was filed outside the one-year limitations period where the first complaint was dismissed for failure to properly serve). While unpublished opinions of the Fourth Circuit are not precedential, they are cited as persuasive but not controlling authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

In other words, even assuming that Chrisp's first action was brought within the 90-day filing window (likely based on the EEOC's second right-to-sue letter), her second action was not, and this court's dismissal of her first action did not extend the 90-day window for purposes of this present action. Chrisp filed her first action on June 22, 2018. She subsequently amended her complaint four times between November 2018 and August 2019. In July 2020, this court dismissed her complaint without prejudice for failure to effect proper service. See Chrisp, 471 F. Supp. 3d at 717. One month later, she filed a second action alleging the same claims as the first action. (Doc. 1.) "[I]f a plaintiff is not diligent and fails to [timely] serve the complaint . . . the case shall be dismissed without prejudice. The 'without prejudice' condition

9

permits a plaintiff to refile the complaint as if it had never been filed. [It] does not, however, give the [plaintiff] a right to refile without the consequence of time defenses, such as the statute of limitations." Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995); see also Basnight v. Potter, No. 2:10-CV-33, 2011 WL 1366376, at *2 (E.D.N.C. Apr. 11, 2011) (first case, which was filed within the 90-day period, dismissed for failing to effectuate service; court dismisses second case as time-barred because it was filed outside the 90-day period). Accordingly, Chrisp's Title VII and ADEA claims are time-barred, and the court will grant UNC's motion to dismiss these claims.

Even if the lawsuit were deemed timely filed, and while Chrisp's filings reflect her belief she was discriminated against, her claims would nevertheless fail to survive the motion to dismiss because they do not allege a plausible claim under applicable law.

Chrisp's first three claims for relief allege discrimination and retaliation under Title VII and the ADEA. (Doc. 1 ¶¶ 22-39.) An essential element of each of these claims is that Chrisp suffered an adverse action from UNC. See Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (listing the elements for Title VII discrimination and retaliation claims); Laprise v. Arrow Int'l, 178 F. Supp. 2d 597, 605 (M.D.N.C. 2001) (same for an ADEA claim).

What constitutes an adverse action is different for a

10

discrimination claim versus a retaliation claim. For a discrimination claim, an adverse action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (citation omitted); see also Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999) (noting that an adverse action is one in which an employee suffers a "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion"). The adverse action requirement is "less restrictive" for a retaliation claim. Neal v. Green Ford, LLC, No. 1:17-CV-569, 2018 WL 6003547, at *7 (M.D.N.C. Nov. 15, 2018). For a retaliation claim, "the plaintiff must show that the action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Laird v. Fairfax Cty., Virginia, 978 F.3d 887, 893 (4th Cir. 2020) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

Under either standard, Chrisp has not plausibly alleged any adverse action to state a claim under Title VII or the ADEA. Indeed, in her complaint she acknowledges that her supervisor would regularly send her job postings "and encouraged [her] to apply for these positions." (Doc. 1 ¶ 18.) The gravamen of Chrisp's

11

complaint is that for one such job posting in Chrisp's department, UNC ultimately hired a white female who was approximately 25 years old. (Id. ¶ 20.) However, to sustain a Title VII claim for discriminatory hiring, Chrisp must allege that "[s]he applied and was qualified for a job for which the employer was seeking applicants." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Here, Chrisp does not allege that she ever applied for the position in question, and her response brief confirms as much.[5]

---

[5] Although the complaint contains no such allegation, Chrisp argues that when she asked about applying for the open position she was told by her "[p]revious manager" that she lacked the skills and qualifications for it. (Doc. 12 at 3; see also Doc. 1-4 at 1.) In general, to state a plausible claim for failure to hire or promote under Title VII, a plaintiff must allege that, among other things, she applied for the position in question. Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998). An exception exists if applying would have been futile, i.e., if the plaintiff "can demonstrate that he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied." Id. (quotations and citation omitted); Westry v. N. Carolina AT & T State Univ., 286 F. Supp. 2d 597, 603 (M.D.N.C. 2003), aff'd, 94 F. App'x 184 (4th Cir. 2004) ("A plaintiff also may establish a *prima facie* case of discrimination without applying for a position by demonstrating that his employer consistently discriminated when making promotion decisions."). In other words, an employee need not subject herself "to the humiliation of explicit and certain rejection" through a futile gesture of a formal application. Brown, 159 F.3d at 902–03 (quoting United States v. Gregory, 871 F.2d 1239, 1242 (4th Cir. 1989)). Here, Chrisp did not apply for the open position, nor has she plausibly alleged that she knew she would be "discriminatorily rejected" due to UNC's "discriminatory policies" had she applied or that UNC "consistently discriminated when making promotion decisions." Cf. Gregory, 871 F.2d at 1241–42 (excusing female plaintiff's failure to apply for a deputy sheriff position when her employer had explicitly stated on multiple occasions that he did not hire women for the position); Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir. 1984) (excusing black employee's failure to formally apply for a sales position when the employer had no black employees in sales, had actively discouraged black employees from applying for sales jobs over multiple years, and stated that the company did not hire black persons for sales jobs). Rather, Chrisp alleges she had been encouraged to apply

12

(See Doc. 12 at 3.)  Further, she does not allege that UNC terminated her because of her race or age or because she filed her first EEOC charge; indeed, her response brief suggests that she voluntarily left UNC. (Id. at 14.) Nor does she allege any other change to her "compensation, terms, conditions, or privileges of employment" as required to prove an adverse action. See 42 U.S.C. § 2000e-2(a).

At most, Chrisp alleges general disagreement with decisions made by her employer, including telling her she did not qualify for a particular job and ultimately hiring another woman for that position. (Doc. 1 ¶¶ 19-20.) In the attached EEOC charges and in her response brief, Chrisp also takes issue with other actions by her manager, including assigning her work that she claims was not her responsibility, "nit-picking my work," and requiring her to assemble work binders by herself.[6] (Doc. 1-2 at 1.) While Chrisp

---

for a number of similar positions previous to the job posting at issue. (Doc. 1 ¶ 18.)

[6] In her narrative attached to her complaint and in her response brief Chrisp also mentions an incident in which she overheard her manager remark that a black colleague was climbing on a bookshelf "like a monkey." (Doc. 1-4 at 1-2; Doc. 12 at 2.) Chrisp states this was a "racial comment" and that she took offense to it. (Id.) She did not mention this incident in her complaint. Regardless, not every comment, even if racially charged or insensitive, rises to the level of a federal claim, and this single incident does not state a plausible claim under Title VII. See Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019) (harassment for a hostile work environment claim must be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (noting that an "isolated incident" of harassment is unlikely to amount to a Title VII claim unless that incident is "extremely serious").

13

might disagree with those actions, contrary to her argument, they do not constitute a violation of her civil rights. Nor does she plausibly allege that any such action was taken as a result of any protected activity. As this court observed in response to Chrisp's first action, her complaint

> consists of vague allegations that Estrada unfairly delegated work responsibilities and made Plaintiff's job stressful. Plaintiff's Complaint identifies her own race and the race of other individuals included in her allegations, and accuses Estrada of making racially offensive comments to another employee. However, there is no allegation that Estrada discriminated against Plaintiff on the basis of race, color, religion, sex, or national origin, nor are any facts alleged to support such a claim. Rather, it appears that Plaintiff's claims generally arise from disagreements with Estrada over managerial decisions, which do not, on their own, give rise to a Title VII claim.

(Doc. 8 at 3, Case No. 1:18CV542.) Nothing has materially changed since then. Title VII "does not set forth a general civility code for the American workplace" or "immunize [employees] from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington, 548 U.S. at 68 (citations omitted). Therefore, even if Chrisp's allegations are true, she has not stated a claim for discrimination or retaliation under Title VII or the ADEA.

At the motion to dismiss stage, a plaintiff must plead sufficient facts, accepted as true, to state a plausible claim for relief. See Sauers, 179 F. Supp. 3d at 550. Chrisp has had adequate opportunity to timely file and serve a complaint with

14

sufficient facts to state a plausible claim for a violation of Title VII or the ADEA. She has not done so. Thus, UNC's motion to dismiss her Title VII and ADEA claims will be granted.[7]

**B.  State-Law Claim**

In the complaint's last claim for relief, Chrisp alleges a violation of the North Carolina Equal Employment Practices Act. (Doc. 1 ¶¶ 40-46.)  UNC seeks dismissal of this claim on the ground that, as an agency of the State of North Carolina, it is immune from suit in federal court under the Eleventh Amendment to the U.S. Constitution.  (Doc. 10 at 12-13.)

"The Fourth Circuit has not conclusively established whether a dismissal based on Eleventh Amendment immunity is a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)." Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 696–97 (M.D.N.C. 2013) (citing Andrews v. Daw, 201 F.3d 521, 524 n.2 (4th Cir. 2000)). This court, like others in the Fourth Circuit, has considered

---

[7] In her response brief, Chrisp makes passing reference to a number of other sources of law, including 42 U.S.C. § 1983, the North Carolina Constitution, and the Family and Medical Leave Act. (Doc. 12.) However, her complaint does not allege claims under these statutes, so the court will not consider their applicability here. See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436, 448 (7th Cir. 2011) (referring to the "axiomatic rule that a plaintiff may not amend his complaint in his response brief"); Lily v. Carter, No. 1:16CV400, 2017 WL 3017704, at *1 n.1 (M.D.N.C. July 14, 2017) ("To the extent Plaintiff's response brief to [Defendant's] motion to dismiss addresses new claims or allegations, the Court will not consider them.").

15

Eleventh Amendment immunity under Rule 12(b)(1) and will do so here.  See Blackburn v. Trustees of Guilford Tech. Community College, 822 F. Supp. 2d 539, 542 n. 2 (M.D.N.C. 2011) (citing cases); McCants v. Nat'l Collegiate Athletic Ass'n, 251 F. Supp. 3d 952, 954-55 (M.D.N.C. 2017) (same).

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction raises the question "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim."  McCants, 251 F. Supp. 3d at 955 (quoting Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012)). While a plaintiff bears the burden of proving the court's subject matter jurisdiction, a defendant who raises the defense of Eleventh Amendment immunity bears the burden of demonstrating that it is entitled to that immunity.  Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014).

The Eleventh Amendment prohibits a private citizen from suing a state in federal court for money damages.[8]  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Ballenger v. Owens, 352 F.3d 842, 844 (4th Cir. 2003).  This prohibition extends to suits against any state agency that is considered an arm of the

---

[8] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State."  U.S. Const. amend. XI.

16

state.  See Blackburn, 822 F. Supp. 2d at 542–43(citing Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)).  State-funded colleges and universities structured to have close ties to the state are considered "arms of the State" for Eleventh Amendment purposes.  Id. (citations and alterations omitted).  There are exceptions to the Eleventh Amendment.  For example, a state can waive its Eleventh Amendment immunity by consent.  Pennhurst, 465 U.S. at 99.  However, the intent to do so must be "unequivocally expressed."  Id.

In the fourth claim for relief, Chrisp attempts to sue UNC, a state agency, in federal court for money damages for an alleged violation of North Carolina law.  There is no indication that UNC has consented to being sued in this court or that it has otherwise waived its Eleventh Amendment immunity for such violations.  See McCants, 251 F. Supp. 3d at 958, 960 (noting that the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one" and holding that "UNC-Chapel Hill has not waived its Eleventh Amendment immunity as an agency of the State of North Carolina").  Accordingly, the Eleventh Amendment bars this claim, and it will be dismissed without prejudice.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that UNC's motion to dismiss (Doc. 9)

17

is GRANTED and the complaint is DISMISSED; the federal claims (First, Second, and Third Claims for Relief) are DISMISSED WITH PREJUDICE, and the state-law claim (Fourth (improperly denominated as another "Third" Claim for Relief)) is DISMISSED WITHOUT PREJUDICE for want of jurisdiction.

/s/    Thomas D. Schroeder
United States District Judge

January 14, 2021

18

Case 1:20-cv-00724-TDS-JEP   Document 15   Filed 01/14/21   Page 18 of 18